WALTER — VR NR ER WR GR (12, 13, 14, 15) | DR DR DR DR DR DR DR (16, 17, 18, 19, 20, 21, 22)

CATHERINE

Results of per capita distribution – 22 parts
1 to John
5 to Lillian
3 to Edward
3 to Theresa
11 to Walter

◯ – Deceased

In re the Marriage of Peggy Ilene
MUELL and Kenneth Dean Muell.

Upon the Petition of Peggy Ilene
Muell, Petitioner-Appellant,

And Concerning Kenneth Dean Muell,
Respondent-Appellee.

No. 86–547.

Court of Appeals of Iowa.

April 22, 1987.

Dan T. McGrevey of McGrevey & Sherman, Fort Dodge, for petitioner-appellant.

William B. Ridout of Sanderson, Ridout & Martens, Estherville, for respondent-appellee.

Considered by OXBERGER, C.J., and HAYDEN and SCHLEGEL, JJ.

OXBERGER, Chief Judge.

In this appeal, we are again asked to approve a trial court's decree dividing the custody of the parties' two children, ages nine and three, on an alternating weekly basis. The children's mother objects to the decree, arguing that the constant custodial shifting is unreasonably disruptive and consequently is not in the best interest of the children. We agree, and modify the decree to award both parents joint custody but grant primary physical care of the children to their mother. In addition, we modify the child support award fashioned by the trial court.

In cases of this nature, our first and foremost consideration is the best interest of the child or children involved. *In re Marriage of Weidner*, 338 N.W.2d 351, 356

(Iowa 1983); Iowa R.App.P. 14(f)(15). In ascertaining how the children's best interests will be served, we review the record de novo. Iowa R.App.P. 4. Accordingly, we are not bound by the trial court's findings of fact, but we do give them weight, particularly where the credibility of witnesses is implicated. Iowa R.App.P. 14(f)(7). Moreover, we recognize that precedent is of little value and that we must base our decision largely upon the peculiar circumstances before us. *Weidner*, 338 N.W.2d at 356.

We agree with the trial court in acknowledging that both parties in this action should be complimented for their mature behavior and parental capabilities. Furthermore, we recognize the obvious gains to be received if the children are allowed to maintain as much contact as possible with both parents. Noting these facts, the trial court concluded that the physical care of the children should be equally divided between the parties because, "It is simply too close a question for the court to call." Furthermore, the court stated that the testimony of Dr. Rita K.L. Frevert, a clinical psychologist who testified at trial, supported this conclusion. Dr. Frevert testified as follows:

> I find it difficult to believe that the regular visitation where they also pack a suitcase, they also go to the other home, and it's more or less mandated that they be there, is as natural as having a living relationship with each parent. And, I believe, at this point in time, research does support that—that children really do become more stabilized by having essentially a home environment in both places if they've got a good relationship with both parents.

Although our statutes similarly recognize the desirability of preserving a child's relationship with both parents after the onset of divorce, *see* Iowa Code § 598.41(2) (1985); *see also In re Marriage of Miller*, 390 N.W.2d 596, 598 (Iowa 1986), the courts of this state have stressed that this preference does not synonymously require divided physical care. *See In re Marriage of Bolin*, 336 N.W.2d 441, 444 (Iowa 1983). This distinction is predicated upon the recognition that, while in most cases a child's best interests will be served by associating with both parents, an attempt to provide equal physical care may be harmfully disruptive in depriving the child of a necessary sense of stability. *See generally* Note, *Divided Custody of Children After Their Parents' Divorce*, 8 J.Fam.L. 58 (1968).

The seminal case in this state discussing the problems often attendant with divided physical care is *In re Marriage of Burham*, 283 N.W.2d 269, 272 (Iowa 1979). In *Burham*, the supreme court noted that divided physical care is generally opposed except in the " 'most unusual circumstances.' " *Id.* (quoting *McCrery v. McCrery*, 258 Iowa 354, 358, 138 N.W.2d 876, 878 (1965)). In addition, the *Burham* court delineated a number of reasons often cited for this opposition, including the recognition that divided custody is destructive of discipline; that it tends to induce in a child a feeling that he doesn't belong to either parent; that in some instances it permits one parent to sow seeds of discontent against the other, causing the child to develop a spirit of rebellion and dissatisfaction; and that it deprives the child of a sense of stability. *Burham*, 283 N.W.2d at 272; *see also generally* Note, *Divided Custody of Children After Their Parents' Divorce*, 8 J.Fam.L. 58 (1968).

Although *Burham* was decided before the Legislature's 1982 amendment distinguishing between the terms "joint custody" and "physical care," we do not think that this intervening legislative definition precludes us from continuing to consider the concerns expressed by the *Burham* court with respect to divided physical care. In reaching this conclusion, we note that in *In re Marriage of Bolin*, 336 N.W.2d 441 (Iowa 1983), the supreme court explicitly stated that the 1982 definitions were enacted "to clarify rather than to change the meaning of the statute" after *Burham* was decided. *Id.* at 444. Consequently, the court's decision in *Burham* continues to be relevant and applicable.

■ Turning to the record in the present case, we are not convinced that Dr. Frevert's generalized conclusion is entitled to the weight given to it by the trial court. In this connection, we note that Dr. Frevert never visited with the parties' children; rather, her conclusion is premised upon unidentified research. Furthermore, we are not persuaded that the trial court properly considered the children's best interests; we think that in order to overcome the historical hesitance to alternating physical care, more must be shown than simply that the case is "too close to call." *See Burham*, 283 N.W.2d at 272. We have reviewed the record in light of these concerns and are unconvinced that the strains attendant with dividing the physical custody of these young children on a weekly basis will not have a negative impact upon their psychological and emotional health. Hence, we conclude that the decree must be modified to provide one of the parties primary physical care.

■ The principles governing our determination of which parent should be named primary physical custodian are set forth in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), and in Iowa Code section 598.41(3). Our examination of the record in light of the factors delineated in *Winter* and in section 598.41(3) convinces us that the children's best interests will be served if Peggy is named their primary physical custodian. In arriving at this conclusion, we note with particular significance that Peggy was responsible for the primary care of the children throughout the marriage and that they progressed successfully under her supervision. In addition, the record discloses that Kenneth's job requires him to be absent from the home for extended periods of time. In these circumstances, we think that Peggy is more capable of providing the children a stable and suitable environment.

■ Notwithstanding this conclusion, we think without equivocation that the chil-dren's best interests require that they be afforded liberal visitation with their father. Consequently, we conclude that Kenneth should be given overnight visitation every Wednesday and alternate weekend visitation rights.[1] The parties employed a similar plan during their separation, and the record indicates that the children functioned well under this agreement. In addition, we think that each parent should spend alternating holidays with the children and that they should divide equally the children's Christmas vacation. Similarly, we think that Kenneth and Peggy should equally divide the custody of the children during their summer vacation. During that half of the summer that the children are staying with Kenneth, Peggy should be allowed the visitation rights usually enjoyed by Kenneth, and vice versa. Finally, we agree with the trial court in encouraging the parties to further extend visitation if permitted in the circumstances. In conclusion, we think that this visitation arrangement properly allows both parents to spend a maximum amount of time with the children in a variety of their activities. *See* Cochran and Vitz, *Child Protective Divorce Laws: A Response to the Effects of Parental Separation on Children*, 17 Fam.L.Q. 327, 352–56 (1983).

■ This brings us to Peggy's contention that the trial court required Kenneth to pay an insufficient amount of child support. It is well settled that although each parent is statutorily obligated to contribute to the support of their children, the amount of their respective contributions is apportioned according to their financial capabilities. *See In re Marriage of Bornstein*, 359 N.W.2d 500, 504 (Iowa App.1984). The factors governing the proper amount of each parent's obligation are set forth in Iowa Code section 598.21(4). We have carefully considered the finances and obligations of both Peggy and Kenneth, and conclude that the trial court's determination that Kenneth pay Peggy child support

---

**1.** Although in *In re Marriage of Fish*, 350 N.W.2d 226, 231, this court recognized that midweek visitation may be unduly disruptive, we think that such visitation is appropriate where, as in the present case, both parties agree that it is in the best interest of the children and the parties reside in the same town only a short distance apart. ·

of $55 per month, per child, is insufficient under the new care conditions. The record discloses that Kenneth earns approximately $925 per month; Peggy earns about $780. In addition, Peggy's expenses as primary physical custodian are much greater than Kenneth's. In these circumstances, we think that Kenneth's support obligation should be increased to $125 per child, per month. This amount more adequately provides for the children's needs without unduly burdening Kenneth.

Finally, Peggy maintains that the trial court should have required Kenneth to assume a greater portion of her attorney's fees. The record reflects that Peggy's attorney's fees totaled $890.37. Prior to the trial, the court ordered Kenneth to satisfy $250 of this amount; this left $640.37 owing. The trial court required Peggy to pay this outstanding amount. We find no abuse of the trial court's discretion in this respect. *See In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). Both parties have significant obligations and we think that the trial court attempted to apportion the fees as equitably as possible.

Similarly, we conclude that both parties should bear the responsibility for their individual costs incurred in connection with this appeal.

AFFIRMED AS MODIFIED.