In re the MARRIAGE OF Beth R. COULTER and Jon F. Coulter.

Upon the Petition of Beth R. Coulter, Appellant/Cross–Appellee,

And Concerning Jon F. Coulter, Appellee/Cross–Appellant.

No. 92–741.

Court of Appeals of Iowa.

May 4, 1993.

Roger J. Hudson and Michael E. Marshall of Smith, Schneider, Stiles, Wimer & Hudson, P.C., Des Moines, for appellant.

Phil V. Watson and Thomas J. Jackowski of Watson & Peterson, P.C., Des Moines, for appellee.

DONIELSON, Judge.

Beth and Jon Coulter were married in 1984. They have a daughter, Ashley, who was born in 1987.

Beth was born in 1963. She is a high school graduate, and she has attended classes at Des Moines Area Community College and at the University of Northern Iowa. During the marriage, Beth worked in a clerical position for an insurance company and earned $5.50 per hour. After becoming pregnant with Ashley, she became a full-time homemaker. From September 1989 until March 1990, Beth worked twenty hours per week at the Yale Cooperative and earned $6.00 per hour. Beth took primary responsibility for the household duties during the marriage.

Jon was born in 1959. He received a bachelor's degree in music education from Arizona State University in 1982. In the summer of 1983, Jon and his brother, Lyn, opened Coulter Marine near Lake Panorama, Panora. In June 1984, Lyn and Jon incorporated the business and became equal owners.

In May 1991, Beth filed a petition for dissolution of marriage. Following trial, the district court entered its findings of fact and conclusions of law. The court determined Jon's interest in Coulter Marine was worth $15,000 on December 1, 1984, and had risen to $190,000 by the time of trial. The court awarded Beth one-half of the appreciation of the business. The court also awarded Beth $500 per month for thirty-six months as rehabilitative alimony.

The court also awarded joint legal and joint physical custody of Ashley. Each parent was to have Ashley in their care fifty percent of the year. The court ordered each party to pay support while Ashley was in the other parent's care. Because Jon's yearly support payments would exceed Beth's payments by $1404, the court required Jon to pay Beth the difference in twelve monthly installments of $117. These payments would increase after Jon's alimony obligation ended.

Beth appeals. She claims the district court erred in: (1) ordering shared physical custody of Ashley; (2) undervaluing Jon's interest in his business, Coulter Panorama Marine, Inc.; (3) ordering the abatement of child support; and (4) awarding her insufficient alimony. She also requests appellate attorney fees.

Jon cross-appeals. He contends if this court determines shared physical custody is not proper, primary physical custody of Ashley should be awarded to him. He also claims the awards of both alimony and attorney fees at the district court level should be reduced.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

I. *Shared Physical Custody.* Beth first contends the district court erred in ordering shared physical custody of Ashley. She further claims the district court erred by failing to award her primary physical custody of Ashley. In his cross-appeal, Jon contends he should be awarded physical custody if it is determined shared physical custody of Ashley is not proper.

■ In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3), in *In re Marriage of Weidner*, 338 N.W.2d 351, 355–56 (Iowa 1983), and in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). The critical issue in determining the best interests of the child is which parent will do better in raising the child. *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App.1985). Gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *Id.*

We agree with the district court in its recognition of the "maturity, intelligence, stability, flexibility, [and] parenting skills" of both Jon and Beth. Both parents should be complimented for their ability to communicate with each other and to give priority to Ashley's welfare. We also acknowledge the obvious gains to be received if Ashley is allowed to maintain as much contact as possible with both parents. *See In re Marriage of Muell*, 408 N.W.2d 774, 777 (Iowa App.1987).

However, shared physical custody is disfavored by the courts except in the most unusual circumstances. *In re Marriage of McElroy*, 475 N.W.2d 221, 223 (Iowa App. 1991); *Muell*, 408 N.W.2d at 776. Although a child's best interests will be served by associating with both parents, "an attempt to provide equal physical care may be harmfully disruptive in depriving the child of a necessary sense of stability." *Muell*, 408 N.W.2d at 776 (citing Note, *Divided Custody of Children After Their Parents Divorce*, 8 J.Fam.L. 58 (1968)). The supreme court in *In re Marriage of Burham*, 283 N.W.2d 269 (Iowa 1979) listed several reasons for the opposition to shared (or divided) custody:

> divided custody is destructive of discipline, ... it tends to induce a feeling of not belonging to either parent, ... [and] in some instances it permits one parent to sow seeds of discontent concerning the other, which can result in a spirit of dissatisfaction in the children and their rebellion against authority.

*Burham*, 283 N.W.2d at 272 (citations omitted).

From our review of the record, we are unable to find the circumstances here rise to the level of unusualness to warrant an award of shared physical custody. Ashley is now five years old and most likely will begin school in the upcoming year. The importance of stability in Ashley's life at this juncture cannot be overemphasized. In its decree, the district court even acknowledged the potential difficulties in this arrangement as Ashley develops physically, academically, and socially. As a result, the court had already ordered the issue of shared custody be reviewed in September 1994.

Although this court recognizes the deep roots each parent has in the community, the financial ability of each parent to provide for Ashley, and their genuine desire to raise Ashley, we do not find the current arrangement is in Ashley's best interests. We therefore modify the decree and order primary physical care of Ashley be placed with one parent. We eliminate the shared physical custody arrangement. We will not determine with which parent primary physical custody of Ashley will be placed, and we remand to the district court for that determination.

Because of our result, we are unable from this record to create a visitation schedule or to compute the noncustodial parent's child support obligation. We remand to the district court for that purpose and we do not retain jurisdiction. *See In re Marriage of Craig*, 462 N.W.2d 692, 693 (Iowa App.1990).

**II.** *Abatement of Child Support.* Beth also challenges the district court's award of child support. Because of our result, we will not address this issue.

**III.** *Valuation of Coulter Panorama Marine, Inc.* Beth next contends the district court undervalued Jon's interest in Coulter Panorama Marine. Beth argues the figures set forth by her expert at trial should be controlling and the distribution of the parties' property should be modified accordingly.

At trial, Jon presented the testimony of James Henkel, C.P.A. Henkel testified he used four methods of valuing the corporation and then took the average of those four methods. In his calculations, he used a thirty percent discount because Jon owned less than majority control of the corporation. He also opined the fair market value of Jon's income was reduced in value $18,000 by virtue of unreported additional income earned by the corporation. Henkel ultimately valued Jon's share to be worth $132,000.

Beth presented the testimony of Steve Givens, C.P.A. Givens used two separate

methods of valuation and ultimately valued Jon's share at $459,000. Givens did not specifically discount for the minority interest.

In its conclusions of law, the district court criticized both expert opinions. Regarding Henkel's computations, the court stated the $18,000 unreported income would actually increase the fair market value of the corporation and not decrease its value as had been asserted by Henkel. The court noted Givens had failed to consider corporate income tax generated by the corporation in 1991. The court also found his salary adjustments were arbitrary and artificially increased the cash flow of the corporation. As a result, the district court found the fair market value of· the corporation to be $190,000. Noting the value of Jon's share had been $15,000 in 1984, the court found the increase in value to be $175,000.

The district court clearly took the testimony of both experts into account in making its findings. The valuation found by the district court was well within the permissible range of evidence and we are not inclined to disturb it on appeal. *See In re Marriage of Wiedemann,* 402 N.W.2d 744, 747 (Iowa 1987); *In re Marriage of Bare,* 203 N.W.2d 551, 554 (Iowa 1973).

**IV. *Alimony.*** Beth also contends the district court awarded her insufficient alimony. In his cross-appeal, Jon argues his alimony obligation should be reduced.

▌ Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Fleener,* 247 N.W.2d 219, 220 (Iowa 1976). When determining the appropriateness of alimony, the court must consider "(1) the earning capacity of each party, and (2) present standards of living and ability to pay balanced against relative needs of the other." *In re Marriage of Estlund,* 344 N.W.2d 276, 281 (Iowa App.1983) (citation omitted).

▌ Beth has worked primarily as a homemaker since becoming pregnant with Ashley some six years ago. We agree Beth is entitled to rehabilitative alimony in order to help her become self-sufficient. However, we consider property division and alimony together in evaluating their individual sufficiency. *In re Marriage of Dahl,* 418 N.W.2d 358, 359 (Iowa App. 1987); *In re Marriage of Griffin,* 356 N.W.2d 606, 608 (Iowa App.1984).

▌ Beth was awarded the family home. Along with the home, Beth was awarded a building which may be income-producing as a storage facility. She was also granted a vehicle clear of any secured interests. Finally, Beth was allocated a lump sum cash payment of $64,000. In light of the substantial property award given to Beth, we find the alimony award of $500 per month for thirty-six months granted to Beth to be just and equitable. We affirm the district court's award of alimony.

**V. *Attorney Fees.*** In his cross-appeal, Jon contends the attorney fees awarded to Beth at the district court level were excessive and should be reduced. Beth requests appellate attorney fees.

▌ In the decree of dissolution, the district court ordered Jon to pay $10,000 of Beth's attorney fees. Iowa trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles,* 338 N.W.2d 544, 546 (Iowa App.1983). To overturn an award the complaining party must show that the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson,* 250 N.W.2d 425, 427 (Iowa 1977), and based on the parties' respective abilities to pay. *In re Marriage of Lattig,* 318 N.W.2d 811, 817 (Iowa App.1982). Finding no abuse of discretion, we affirm the district court's order regarding attorney fees.

▌ In determining an award of appellate attorney fees, we are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). An award of attorney fees is not a matter of

right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). We award Beth $2500 appellate attorney fees.

The costs of this appeal are taxed one-half to Beth and one-half to Jon.

For the reasons stated, we affirm the decree of the district court as modified. We remand with directions to the district court to establish a primary physical custodian, child support, and a schedule for visitation.

**AFFIRMED AS MODIFIED AND RE-MANDED.**

All Judges concur, except OXBERGER, C.J., and SCHLEGEL, J., who dissent.

OXBERGER, Chief Judge (dissenting).

I respectfully dissent. In our de novo review I would award physical custody of Ashley to Beth.

I also disagree with the district court's calculations of the parties' monthly income. First, the alimony awarded to Beth was deducted from Jon's monthly income. While the uniform child support guidelines established by the Supreme Court do not include alimony as a deduction in present decrees, alimony may be deducted "in an attempt to do justice between the parties". *In re Marriage of Lalone,* 469 N.W.2d 695, 697 (Iowa 1991). I do not believe justice requires deduction of alimony in this case. I would add $500.00 to Jon's monthly income.

In addition, Beth's income, as determined by the district court, included an earning capacity of $7.00 per hour for a 40-hour work week. However, at the time of trial Beth was not employed outside the home, nor had she been since she became pregnant with Ashley. She was awarded reha-bilitative alimony for the express purpose of re-education or retraining in order that she may become self-supporting. I find it unrealistic for Beth to work full-time earning $7.00 per hour during the time she must become re-educated or retrained. An award of rehabilitative alimony coupled with the requirement that Beth work full-time runs counter to the purpose of rehabilitative alimony. In *In re Marriage of Francis,* rehabilitative alimony was characterized as:

[A] way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.

Because self-sufficiency is the goal of rehabilitative alimony, the duration of such an award may be limited or extended depending on the realistic needs of the economically dependent spouse, tempered by the goal of facilitating the economic independence of the ex-spouses.

442 N.W.2d 59, 63–64 (Iowa 1989) (citations omitted).

I believe it would be virtually impossible for Beth to receive re-education or re-training while being expected to work 40 hours per week. I would not include potential but presently non-existent earnings in calculating Beth's monthly income.

In all other respects I concur with the majority opinion.

SCHLEGEL, J., joins this dissent.