**IN THE COURT OF APPEALS OF IOWA**

No. 16-0886
Filed March 8, 2017

**IN RE THE MARRIAGE OF KYLE D. MORRISON
AND CASSIE K. MORRISON**

**Upon the Petition of
KYLE D. MORRISON,**
        Petitioner-Appellee,

**And Concerning
CASSIE K. MORRISON,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Keokuk County, Myron L. Gookin,

Judge.


        The parties' each appeal from an order denying relief in a dissolution

modification action. **AFFIRMED AND REMANDED.**


        Catherine C. Dietz-Kilen and Jaclyn M. Zimmerman of Harrison & Dietz-

Kilen, P.L.C., Des Moines, for appellant.

        John C. Wagner of John C. Wagner Law Offices, P.C., Amana, for

appellee.


        Heard by Danilson, C.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

This case arises out of a dissolution modification action filed not long after the parties entered into a stipulated decree dissolving their marriage. Cassie and Kyle Morrison divorced in January 2014. They stipulated to joint custody of their two children, A.M. (born 2011) and M.M. (born 2012). Pursuant to the stipulation, Cassie was awarded physical care of the children, and Kyle was granted liberal visitation. In December 2014, Cassie filed her petition to modify the decree, seeking clarification of the parties' custodial rights, modification of the visitation schedule, and modification of child support. Kyle filed a counterclaim, seeking physical care of the parties' children. The district court denied the requested relief. Both parties appeal.

I.

We review de novo cases tried in equity. *See* Iowa R. App. P. 6.907. We review the entire record and decide anew the factual and legal issues preserved and presented for review. *See In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Prior cases have little precedential value; we apply the relevant law to the unique facts and circumstances of each case. *See In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995); *In re Marriage of Snowden*, No. 14-1920, 2015 WL 4233449, at *1 (Iowa Ct. App. July 9, 2015) ("All happy families are alike; each unhappy family is unhappy in its own way." (quoting Leo Tolstoy, *Anna Karenina* 1 (1873))). Although our review is de novo, we afford deference to the district court. *See In re P.C.*, No. 16-0893, 2016 WL 4379580, at *2 (Iowa Ct. App. Aug. 17, 2016).

II.

Cassie and Kyle have a contentious relationship. One incident is illustrative. The two give vastly different accounts of the incident. According to Cassie, she went to Kyle's house to pick up the children. After she arrived, Kyle charged out of the house and attempted to throw her off the porch, causing her to fall and hit her knee. She testified Kyle threw the children's things on the front lawn. For his part, Kyle states Cassie arrived on the morning in question earlier than her scheduled pick-up time and attempted to gain entry into the house but the door was locked. After Kyle unlocked the door, he asked Cassie to wait, and she slammed the door into him. Later during the same incident, when Kyle was bringing the children's belongings outside, Cassie shoved him into the side of the house. According to Kyle, he suffered lacerations, which were evidenced by photographs. He stated after Cassie and the children had left, Cassie almost immediately returned, barged into the home, and demanded one of the children's blankets, which Kyle threw at her, and she left. Both contacted the county sheriff's office. The sheriff's deputy's report noted Cassie changed her story multiple times. We note Cassie's testimony is inconsistent with the report she gave the deputy. No charges were formally filed in the incident. Cassie retained her attorney in this matter immediately after this incident.

Cassie and Kyle each cite to several other incidents evidencing the contentiousness of their relationship. We find it unnecessary to discuss them in any great detail, or even at all. Four broad conclusions can be drawn from the record. First, Cassie and Kyle have a contentious relationship. Second, Cassie and Kyle each deny any fault for their contentious relationship while oblivious

each bears fault.  Third, Cassie and Kyle are good parents and care a great deal about their children.  Fourth, Cassie and Kyle's contentious relationship has the potential to undermine their individually good parenting.

III.

A.

We first address Kyle's cross-appeal.  Kyle argues the district court erred in failing to grant his petition to modify the dissolution decree and grant Kyle physical care of the children.  "The general principles guiding our adjudication of petitions for modification of dissolution decrees are well-established."  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change.  The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.  They must relate to the welfare of the children.  A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being.  The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983) (citation omitted).  In sum, the party seeking to change physical care must establish a permanent and material change in circumstances and the ability to provide superior care.  *See Moellers v. Sindelar*, No. 14-1361, 2015 WL 1546464, at *1 (Iowa Ct. App. Apr. 8, 2015).  The burden on the party seeking modification is a heavy one.

Kyle argues modification of the decree is warranted here because Cassie has demonstrated she will not honor Kyle's rights as joint legal custodian of the

children. Specifically, Cassie arranged counseling for A.M. without first consulting Kyle and continued the counseling sessions without subsequently informing Kyle. Kyle became aware of the counseling only when it was disclosed during discovery in the modification proceeding. Cassie contends secrecy was necessary here because of the nature of the counseling. Cassie testified A.M. stated on two separate occasions that Kyle made a threatening statement about Cassie and that Kyle stated he hated Cassie's boyfriend. Cassie sought counseling for A.M. because of these statements and because Cassie perceived A.M. was suffering separation anxiety during visitation.

We cannot conclude Cassie's conduct justifies a change in physical care of the children. When parents are awarded joint legal custody, both parents have "legal custodial rights and responsibilities toward the child" and "neither parent has legal custodial rights superior to those of the other parent." Iowa Code § 598.1(3) (2013). It is clear Cassie's conduct violated Kyle's rights as joint legal custodian of A.M. Cassie testified she knew her conduct was in violation of the decree, but she believed secrecy was in A.M.'s best interest because of the threat Kyle allegedly made. Kyle's remedy for Cassie's conduct, however, is to initiate contempt proceedings, which is not an issue in this appeal. The remedy, on the present record, is not to change physical care of the children.

In addition, to change physical care of the children, Kyle must establish he could provide superior care for the children. *See In re Marriage of Thielges*, 623 N.W.2d 232, 238 (Iowa Ct. App. 2000) (finding the father failed to prove he could provide superior care because, "[a]t most, the record shows [the father] and [the mother] are both fallible human beings who can provide the same level of care

for their children"). While it is possible that repeated or continuous violation of Kyle's custody rights might establish he could provide superior care to the children, this record does not yet establish the fact. "The importance of stability in [the children's lives] . . . cannot be overemphasized." *In re Marriage of Coulter*, 502 N.W.2d 168, 173 (Iowa Ct. App. 1993).

B.

In the event he is not awarded physical care of the children, Kyle contends he should be granted joint physical care of the children. "If joint physical care is awarded, 'both parents have rights to and responsibilities toward the child including, but not limited to, shared parenting time with the child, maintaining homes for the child, [and] providing routine care for the child.'" *In re Marriage of Hansen*, 733 N.W.2d 683, 691 (Iowa 2007) (quoting Iowa Code § 598.1(4)). Four helpful, but not exclusive, factors for the court to consider when deciding whether joint physical care is in the best interests of the child are: (1) historical contributions to the physical care of the children by both parents; (2) "the ability of [the parents] to communicate and show mutual respect"; (3) the history and "the degree of conflict between the parents"; and (4) "particularly when there is a turbulent past relationship, . . . the degree to which the parents are in general agreement about their approach to daily matters." *Id.* at 697–99.

On de novo review, we conclude the decree should not be modified to grant the parties joint physical care of the children. First, there has not been a change in circumstances warranting modification of the decree. The parties' contentious relationship is merely a continuation of what came before. Second, "a stormy marriage and divorce presents a significant risk factor that must be

considered in determining whether joint physical care is in the best interest of the child." *Id.* at 698. The award of joint physical care where the parties already have a contentious relationship poses a great risk of increasing the hostility between the parents and negatively impacting the children. *See id.* Third, beyond their general hostility toward each other, Cassie and Kyle have great difficulty communicating information regarding the children and coordinating routines for the children. For example, the parties are unable to complete the simple task of exchanging the children for visitation without hostility flaring up and have now involved their parents in the exchanges. While it is unrealistic to believe former spouses will be in agreement on all issues, "the parents must generally be operating from the same page on a wide variety of routine matters." *Id.* at 699. As always, the guiding star of any custody dispute is the best interests of the child. *See Hoffman*, 867 N.W.2d at 32. There is no indication that modification of the parties' stipulated decree to award the parties shared care of the children would be feasible, let alone in the best interests of the children.

IV.

A.

We next address Cassie's appeal. Cassie contends the district court erred in denying her petition to clarify the legal custody provisions of the decree. To be clear, Cassie does not seek to modify the legal custody provisions of the decree. Instead, she seeks to have the decree define "joint legal custody" to mean she has the "sole right to make decisions concerning the routine care of the children," which would include the right to: (1) make decisions on the

children's routine and non-emergency health care; (2) make all doctor's appointments for the children; (3) make decisions regarding the children's daycare and extracurricular activities; (4) manage and make decisions regarding the children's education; and (5) be the only parent who is allowed to communicate with the children's doctors, providers, and caretakers. In Cassie's view, Kyle would either have no rights with respect to these issues or only the right to be consulted. Cassie contends "clarification" of joint custodial rights is necessary because Kyle has "interfered" with the children by requesting information directly from the children's doctors and teachers.

Cassie misunderstands the meaning of joint legal custody. Quite simply, a parent's request for information regarding the parent's children is not an "interference" with the other parent's care of the children. Joint legal custody means "both parents have legal custodial rights and responsibilities toward the children" and "neither parent has legal custodial rights superior to those of the other parent." Iowa Code § 598.1(3). These rights include, "equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction." *Id.* "A parent who is awarded legal custody has the ability to participate in fundamental decisions about the child's life." *Hansen*, 733 N.W.2d at 690. The stipulated decree correctly sets forth the parties' respective rights and responsibilities as joint legal custodians of the children. Information regarding the children should be equally available to both parents and, ideally, freely exchanged between them.

As the physical custodian of the children, Cassie does have the authority to make decisions regarding the children's routine care. However, Cassie's

proposed definitions of "routine care" go far beyond "the myriad of details associated with routine living" and redefine legal custodial rights. *Id.* at 691. What Cassie seeks is de facto sole legal custody of the children to the detriment of Kyle's custodial rights. To modify an award of joint legal custody to sole custody, the applying party must prove by a preponderance of evidence that there has been a material and substantial change in circumstances that it would be in the child's best interest to grant the parent sole custody, including sole decision-making power. *See In re Marriage of Leyda*, 355 N.W.2d 862, 865 (Iowa 1984). Cassie has not proved or attempted to prove the grounds authorizing modification of Kyle's legal custodial rights. We conclude the district court was correct to deny Cassie's request for de facto modification of the award of joint legal custody.

B.

In her modification petition, Cassie also sought to modify the parties' visitation schedule. Cassie primarily sought to limit Kyle's midweek visitation and make some additional changes regarding birthday visitations and holidays. Cassie contends the modification of Kyle's visitation would reduce potential friction points between the former spouses and bring clarity to the visitation schedule.

As with most family law matters, our primary concern is the best interests of the children. The court is obligated to order visitation that

> assure[s] the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm

to the child, other children, or a parent is likely to result from such contact with one parent.

Iowa Code § 598.41(1)(a). "Liberal visitation is generally in the best interests of children." *Snowden*, 2015 WL 4233449, at *4. "A parent seeking to modify visitation must only establish 'that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children.'" *In re Marriage of Brown*, 778 N.W.2d 47, 51–52 (Iowa Ct. App. 2009) (citation omitted). Generally, the degree of change that must be demonstrated to modify visitation is less than what is required to modify physical care. *See, e.g., In re Marriage of Yazigi*, No. 13-1553, 2015 WL 1046129, at *2 (Iowa Ct. App. Mar. 11, 2015); *In re Marriage of Rees*, No. 04-1380, 2005 WL 975653, at *2 (Iowa Ct. App. Apr. 28, 2005).

Cassie has not established the proposed modification is in the best interests of the children. *See In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994) ("However, a parent seeking modification of a visitation order bears an additional burden to prove 'that the requested change in visitation is in the best interests of the child."). First, and foremost, the proposed modification does little to decrease the number of exchanges between the parties. Instead, the proposed modification only decreases Kyle's total time spent with the children. For example, the proposed change to have the exchange occur on Sunday evening rather than Monday morning only limits Kyle's opportunity to spend an evening with the children and read to the children before they go to sleep, something they often do together, without reducing the total number of exchanges. Likewise, the proposal to eliminate an overnight

visitation midweek only serves to shorten Kyle's time with the children from a day to several hours without actually reducing the number of exchanges. Second, it appears the proposed modification was advanced to further Cassie's goal of preventing Kyle from having contact with the children's school and daycare while the children are in his care. We have discussed this issue above with respect to Cassie's request for de facto legal custody and need not repeat the same analysis here.

The record reflects Kyle loves his children. The children love their father and enjoy the various activities they do together. Cassie's proposed modification would only work to deprive the children of maximum physical and emotional contact with Kyle and Kyle's extended family. In the end, Cassie's proposed modifications as a solution to minimize the conflict between the parents would be inequitable. Both are at fault for the communication problems between them, but Cassie's proposed modifications would essentially result in a penalty for Kyle and boon for Cassie. That is not in the children's best interests. Stability in the current visitation schedule would be in the best interests of both children. *See Coulter*, 502 N.W.2d at 171.

## C.

Cassie next contends the district court erred in failing to modify the child support payments Kyle makes. "We review orders on applications to modify child support provisions de novo." *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983). But "the trial court has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity." *Id.* To modify child support, there

must be a substantial change in circumstances. *See* Iowa Code § 598.21C(1). "[A] substantial change in circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines." Iowa Code § 598.21C(2).

In the original stipulated decree, child support was set at $600 per month. Cassie argued this number should be recalculated to $927.98 per month based on Kyle's annual income for 2015 in the amount of $56,606.45, her annual daycare expenses of $5921.00, and Cassie's annual salary in the amount of $32,532.34. The district court found Kyle's annual income for child support purposes to be $30,000 and Cassie's to be $32,500. The district court calculated Kyle's child support obligation to be $570.38 per month, which was not a change exceeding ten percent, and therefore determined the child support payments should not be modified.

The fighting issue is whether the district court erred in using the $30,000 figure for Kyle's annual income. "In calculating child support, the first step is to determine the parents' current monthly net income from the most reliable evidence presented." *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 51 (Iowa 1999). Net income is calculated through taking gross monthly income less allowable expenses. *See id.* Cassie contends the district court should have calculated child support based on Kyle's gross income for 2015 in the amount of $56,606.45 as reflected in his form 1099s from three different revenue sources: (1) his chemical and seed sales; (2) his construction work; and (3) his family's farm. Cassie does not contend that Kyle would not have allowable expenses. Instead, she contends Kyle did not submit sufficient evidence of his allowable

expenses for 2015. We disagree. Kyle testified he had not yet prepared his tax returns for 2015 and had thus not yet calculated his exact expenses. He testified his allowable expenses would be similar to those in 2014 as evidenced in his 2014 tax return. Kyle testified his net income would be approximately $30,000 per year as reflected in his 2014 tax returns. The district court credited Kyle's testimony. Although our review is de novo, we do provide the district court "deference because the district court had an opportunity to view, firsthand, the demeanor of the witnesses when testifying." *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). Further, it would be inequitable to calculate child support using Kyle's gross income when he had significantly less net income. *See Vetternack*, 334 N.W.2d at 762–63.

Cassie also contends she was entitled to cash medical support. Medical support by the noncustodial parent is required under statute. *See* Iowa Code § 252E.1A(1) ("An order or judgment that provides for temporary or permanent support for a child shall include a provision for medical support for the child as provided in this section."); *Ryan v. Wright*, No. 15-0413, 2015 WL 6508703, at *5–7 (Iowa Ct. App. Oct. 28, 2015); *see also* Iowa Code § 252E.1(9) ("[T]he payment to the obligee of a monetary amount in lieu of a health benefit plan . . . is an obligation separate from any monetary amount of child support ordered to be paid."). According to the Code:

> If a health benefit plan is not available at the time of the entry of the order, the court shall order a reasonable monetary amount in lieu of a health benefit plan, which amount shall be stated in the order. For purposes of this subsection, a reasonable amount means five percent of the gross income of the parent ordered to provide the monetary amount for medical support or, if the child support guidelines established pursuant to section 598.21B

specifically provide an alternative income-based numeric standard for determining the reasonable amount, a reasonable amount means the amount as determined by the standard specified by the child support guidelines.

Iowa Code § 252E.1A(3). "Cash medical support is authorized under this statutory and rule scheme." *Ryan*, 2015 WL 6508703, at *7. The district court failed to determine Kyle's cash medical support. We thus remand this matter to determine cash medical support based on the existing record. *See id.* at *2, *7 (remanding the case for determination of cash medical obligation where the court initially failed to do so).

V.

The parties request appellate attorney's fees. Appellate attorney fees are not a matter of right, but rest within the court's discretion. *See In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Id.* Under the circumstances, we do not award any appellate attorney fees.

VI.

For the foregoing reasons, we affirm the judgment of the district court. We remand this matter for the determination of cash medical support based on the existing record. We do not retain jurisdiction.

**AFFIRMED AND REMANDED.**