# IN THE COURT OF APPEALS OF IOWA

No. 21-1021
Filed March 30, 2022

IN RE THE MARRIAGE OF ADAM J. MCCUSKER
AND SARA A. MCCUSKER

Upon the Petition of
ADAM J. MCCUSKER,
      Petitioner-Appellee,

And Concerning
SARA A. MCCUSKER,
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Alan Heavens, Judge.

Sara McCusker appeals the physical care provisions of the decree dissolving her marriage to Adam McCusker. **AFFIRMED.**

Thomas J. Viner of Viner Law Firm P.C., Cedar Rapids, for appellant.

Andrew B. Howie and James R. Hinchliff of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

Considered by May, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

In the words of the district court, "this case is not about a good parent or a bad parent; rather, it's about two excellent parents"—Adam and Sara McCusker. After the breakup of their marriage, each moved away from the town where the family had been residing. While their divorce was pending, the district court implemented a temporary joint physical care arrangement that allowed the parties' two young children to continue attending their same school and daycare. Sara sought to maintain that arrangement but, because of the distance between the parties, the court found it unworkable in the long run and placed the children in Adam's physical care. Sara appeals, challenging the court's denial of her requests for joint physical care or physical care of the children.

## I.  Background Facts and Proceedings

When Adam and Sara were still dating, they purchased a home together in Monticello and moved there in 2007. They married five years later. Their first child was born in 2014, and their second came alone in 2017.

In early 2020, the parties decided to end their marriage. Sara moved out of the marital home in Monticello and into the home of her boyfriend, Andy. He lives roughly thirty minutes from Monticello. Even after leaving the family home, Sara still spent a significant amount of time there to help with the children because Adam was pursuing an accounting degree. She also felt it was important "[t]o show the kids that we were still going to always put them first and do what's best for them."

Adam filed a petition to dissolve the parties' marriage in May. Each requested physical care of the children. The parties sold their home in Monticello in September, and Adam moved in with his now fiancée, Jenelle. She lives about

one hour away from Monticello.  Jenelle has two children of her own, aged nine and twelve, who live with her part-time.  According to Jenelle, her children became "almost like instant" siblings with the parties' children.  Sara's significant other, Andy, also has a child of his own.  Like Jenelle's children, Andy's daughter has a good relationship with the parties' children, but she was planning to leave Andy's home in the fall to attend college.

After the home in Monticello was sold, the district court entered a temporary order placing the children in the parties' joint physical care.  Although the court directed the parties to care for the children "on a 4-day rotation," the parties agreed to alternate caring for them on a weekly basis.  At the time, the older child was in kindergarten at a private school in Monticello.  And the younger child was attending daycare in Monticello but set to start preschool the next fall.  The parties temporarily agreed the children would continue attending their school and daycare in Monticello, with each transporting them there during their parenting time.  While in Sara's care that meant a one-hour roundtrip for the children every weekday, which increased to a two-hour roundtrip when in Adam's care.

At the time of trial in May 2021, Adam was thirty-eight years old.  He recently obtained a new job where he works from 9:00 a.m. to 5:00 p.m.  His home with Jenelle is about five minutes away from their town's elementary school.  Sara is also thirty-eight years old.  She works from 7:00 a.m. to 2:00 p.m. or 3:00 p.m. about ten minutes away from her new home with Andy.  Her home is also close to her new town's elementary schools, which include both public and private options, though Sara preferred that the children attend a private school.

By all accounts, Adam and Sara are model parents. Their homes are suitable for the children, they communicate well with one another, and they can, for the most part, effectively co-parent. For instance, they worked with one another to allow the older child to participate in tee-ball in Monticello while awaiting trial. And they agreed to wait to send the younger child to preschool due to potty-training issues. Unlike many cases that come before this court, the text messages between the parties were cooperative and respectful, showing a willingness on both sides to give the other parent time with the children.

Yet the parties differed in one fundamental aspect—they could not agree on where the children should attend school once their divorce became final. Sara wanted to continue the temporary joint physical care arrangement and have the children remain at their school and daycare in Monticello. She explained: "My children are doing well. They're thriving. They're happy. They're healthy. I don't want to upset that apple cart." Alternatively, she requested physical care of the children. If that request was granted, Sara proposed keeping the children at their school and daycare in Monticello or moving them to a school in her new town.

Adam, on the other hand, wanted the children to live with him and attend school in his new town. He felt that it did not make sense to have the children attend school in a town where neither parent lived. Adam was concerned not only with eventual afterschool activities but also with the travel time, potential weather issues, and emergencies. He was also worried about the social aspect of the children going to a school in a town where they don't live, explaining: "[I]t's a hardship on the kids because . . . people they know in school aren't going to be the same people they know where they live, so they won't be able to have, you

know, friends, structure." The deciding factor for the district court in evaluating Sara's request for joint physical care was the parties' disagreement on where the children should attend school and the geographic distance between them. The court reasoned:

> Adam and Sara restarted their lives away from Monticello so it makes no sense to leave their two children behind for the sole purpose of preserving a joint physical care arrangement that was only workable when both parents lived close to where their children went to school.
>
> Adam and Sara's fundamental disagreement on daily matters outweighs their past and current history of respectfully cooperating in so many other parenting maters while they shared physical care of their children. It's in [the children's] best interest to go to a school near where one of their parents resides and not spend an unnecessarily long amount of time in the car or bus commuting to and from school.

Turning to who should be granted physical care, the court generally concluded consideration of the factors contained in Iowa Code section 598.41(3) (2020) did not favor one parent over the other, as "Adam and Sara are such talented parents." What stood out to the court was the relationship between the parties' children and Jenelle's children, their soon-to-be step-siblings. While the court acknowledged they were not yet step-siblings, the court noted the parties' children already treated Jenelle's children as siblings and were closely bonded to them. The court also acknowledged the children's bond with Andy's college-aged daughter. But it found the children would benefit more by being in Adam's home with Jenelle's children because they are closer in age and would attend the same school. As such, the court placed the children in Adam's physical care with visitation for Sara, including alternating weeks during the summer months. At Sara's request, the court enlarged the decree to provide more specifics about

visitation but otherwise denied her motion to reconsider, enlarge, or amend. Sara now appeals.

## II.     Standard of Review

Appellate review of dissolution proceedings is de novo. Iowa R. App. P. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). While we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). When considering child custody, our principal consideration is the best interests of the children. Iowa R. App. P. 6.904(3)(o); *see In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

## III.    Analysis

### A.     Joint Physical Care

We start with Sara's claim that the children should have been placed in the parties' joint physical care. Where, as here, "joint legal custody is awarded to both parents, the court may award joint physical care to both joint custodial parents upon the request of either parent." Iowa Code § 598.41(5)(a). Physical care determinations are based on the best interests of *children*, not "upon perceived fairness to the *spouses*." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.*

We consider the following nonexclusive factors in determining whether a joint physical care arrangement is in the best interests of children:

(1) "approximation"—what has been the historical care giving arrangement for the child[ren] between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *Hansen*, 733 N.W.2d at 697–99).

We agree with Sara, and the district court, that the first three *Hansen* factors unquestionably weigh in favor of placing the children in the parties' joint physical care. And with the exception of where the children should attend school, the parties also generally agree about their approach to daily matters. But our determination "must still be based on Iowa's traditional and statutorily required child custody standard—the best interest of the child[ren]." *Hansen*, 733 N.W.2d at 695. Even if the *Hansen* factors weigh in favor of joint physical care, "[t]he geographic proximity of the parents" is a mandatory consideration under Iowa Code section 598.41(3)(h) and can serve as a "major obstacle" to shared care. *See Teggatz v. Ellingson*, No. 19-1816, 2020 WL 2065944, at *2 (Iowa Ct. App. Apr. 29, 2020).

Simply put, requiring these young children who are in the formative years of their education to endure about one hour of commuting time each day while in Sara's care and two hours while in Adam's care is not in their best interests. *See, e.g.*, *Garland v. Dunn*, No. 21-0415, 2021 WL 5106447, at *3 (Iowa Ct. App. Nov. 3, 2021) (explaining "[o]ur case law makes clear that geographic distance alone between co-parents can make joint-care agreements unfeasible, especially as 'the stress of the commute falls on the child disproportionately'" and agreeing a one-

hour drive "made shared care impractical" (citation omitted)); *Thorpe v. Hostetler*, 949 N.W.2d 1, 6–7 (Iowa Ct. App. 2020) (finding joint physical care was no longer in child's best interests when one parent moved one hour away); *Teggatz*, 2020 WL 2065944, at *2 (finding need for child "to be driven nearly an hour to school and nearly an hour home every school day for half the time" rendered joint physical care contrary to child's best interests); *In re Marriage of Scurr*, No. 11-1905, 2012 WL 2122306, at *1 (Iowa Ct. App. June 13, 2012) (finding that "[b]ut for the distance between the parents' homes, this would have been a paradigmatic case for joint physical care" under the *Hansen* factors but agreeing "approximately an hour and a half to an hour and forty-five minutes of travel time each day" was a "major obstacle" rendering joint care unworkable).

We acknowledge Sara's claim that denying her request for joint physical care changes the consistency the children have known. But these children are young and adaptable, and any consistency they have experienced under the temporary order has been short-lived. This short-term consistency is outweighed by the detriment they would experience under Sara's proposed joint physical care arrangement. *See, e.g.*, *In re Marriage of Muell*, 408 N.W.2d 774, 776 (Iowa Ct. App. 1987) ("[W]hile in most cases a child's best interests will be served by associating with both parents, an attempt to provide equal physical care may be harmfully disruptive in depriving the child of a necessary sense of stability."). The distance between the parties' current homes is just too great to allow joint physical care to be workable. *See Thorpe*, 949 N.W.2d at 6–7 (collecting cases). We accordingly affirm the district court's denial of Sara's request for joint physical care.

## B.     Physical Care

Next, Sara challenges the district court's decision to place the children in Adam's physical care instead of hers. With these two superior parents, the district court was unquestionably tasked with a difficult decision, one that it described as a "close call" after considering the relevant physical-care factors. *See* Iowa Code § 598.41(3) (setting forth relevant factors); *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974) (discussing additional factors). "In close cases such as this, we give careful consideration to the district court's findings." *In re Marriage of Reed*, No. 09-0029, 2009 WL 4122884, at *6 (Iowa Ct. App. Nov. 25, 2009).

The difference that stood out to the district court, and us, is that Andy's daughter is an adult on the brink of leaving the nest to attend college, while Jenelle's children are closer in age to the parties' children and will attend the same school. This circumstance will help the children transition into their new school. The children will also benefit more from their relationship with Jenelle's children, who will be in Adam's home with them, as opposed to Andy's daughter, who is starting her adult life. Sara does not dispute this rationale, and we find her claim that the court failed to consider the children's relationship with her, Andy, and his daughter unfounded. Sara also claims that the court made no finding the school the children will attend in Adam's care is better than the school they would attend in her care. But the parties offered no evidence about the characteristics of each school, other than that one is public and one is private. The court properly based its decision on the evidence before it.

We end with Sara's claim that the court did not find Adam can provide superior care. As we have stated throughout this opinion, both parents are exemplary and can provide equally satisfactory care for the children. *See*

*Fennelly*, 737 N.W.2d at 101 (noting the "conundrum" faced by the district court in deciding which of two suitable caretakers should have physical care). But because a joint care arrangement is unworkable, a physical-care parent had to be chosen. In this close case, the district court was in the best position to make that decision with its unique ability to assess witness demeanor. *See In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996) ("[I]n the end we determine this to be a close case, for both parents love their children very much and each is capable of providing for their long-range best interests. In situations such as this, we note the district court had the parties before it and was able to observe and evaluate the parties as custodians."). We affirm the court's placement of the children in Adam's physical care.

### C.     Appellate Attorney Fees

Adam requests an award of appellate attorney fees, citing his obligation to defend the district court's decision. "Appellate attorney fees are awarded upon our discretion and are not a matter of right." *In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020). "When considering whether to exercise our discretion, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (altered for readability). Adam was obligated to defend the appeal, the central focus being the court's denial of Sara's request for shared care. But our determination of that issue was an extremely close call. Adam also has a higher income, and there is nothing in the record to show he has a need for an award. Sara's lower income and support obligation also limit her ability to pay. Upon our review, we deny Adam's request for appellate attorney fees. However, costs on appeal are taxed to Sara.

**IV.      Conclusion**

We affirm the district court's physical care decision and deny Adam's request for appellate attorney fees.  Costs on appeal are taxed to Sara.

**AFFIRMED.**