**In re the MARRIAGE OF Patsy STEPP and Jamie Stepp**

**Upon the Petition of Patsy Stepp, Petitioner–Appellee/Cross–Appellant,**

**And Concerning Jamie Stepp, Respondent–Appellant/Cross–Appellee.**

**No. 91–755.**

Court of Appeals of Iowa.

March 24, 1992.

Lee E. Poppen of Knoshaug & Poppen Law Firm, Clarion, for appellant.

Dan T. McGrevey, Fort Dodge, for appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

DONIELSON, Presiding Judge.

Patsy and Jamie Stepp were married in 1983 after living together for several years. They have two minor children: a son, Jamie Lee, who is eight years old, and a daughter, MacKenzie, who is four. In January 1989, the parties separated, and Patsy commenced dissolution proceedings. On April 18, 1991, the district court dissolved the parties' marriage, distributed their property, and awarded them joint custody of their minor children. Patsy was awarded primary physical placement of the children subject to Jamie's visitation rights.

Jamie is thirty-seven years old and employed as a laborer. He has a bachelor's degree in accounting. His net monthly income, excluding overtime,[1] is approximate-

---

1. We do not believe Jamie's overtime pay should be included in his net income for the

ly $968 per month. Patsy is thirty-two years old and unemployed. She is a high school graduate. She receives monthly ADC payments and food stamps totaling $633. Due to MacKenzie's health problems, she receives federal benefits through Title XIX. Throughout the marriage, Patsy was the primary caretaker of the children, and Jamie was the primary wage earner. Both parties have used and sold drugs in the past.

In awarding Patsy primary physical care of the parties' children, the trial court placed emphasis on three factors. The trial court found Patsy was experienced and trained in caring for MacKenzie's medical problems, she has no demanding out-of-home activities, and the siblings should not be separated. Jamie was awarded visitation including the third weekend of each month, alternating Thanksgiving and Christmas holidays, additional visitation as the parties agree, and summer vacation. Jamie was ordered to pay child support to Patsy in the amount of $180 per month per child. In addition, the court ordered the parties to maintain adequate medical and hospital insurance for the children.

At the time of trial Patsy resided in the parties' homestead valued at $14,888.00 and subject to a debt of $10,855.98. Jamie owns a home in Leland, Iowa, valued at $20,000.00 with a debt of $24,000.00. He lived there at the time of trial with his mother, Wilda Phillips. The marital property and debts were divided between the parties, with Patsy receiving the homestead and Jamie receiving the residence in Leland, Iowa. Various debts were also split between the parties. Patsy was required to pay the balance due on the homestead mortgage, and Jamie was required to pay the balance due on the residence in Leland.

Jamie has appealed and Patsy has cross-appealed from various provisions of the decree. Jamie challenges the custody and support provisions of the decree. He asserts that he is better able to minister to

the long-term best interests of the children. Accordingly, he requests the children be placed in his primary physical care and Patsy be ordered to pay child support. Alternatively, Jamie argues the visitation provisions of the decree are too restrictive.

Patsy concedes the visitation provisions are too restrictive, but resists any change regarding the physical placement of the children. In her cross-appeal, Patsy focuses on the economic provisions of the decree. She requests this court modify the child support and property distribution provisions of the decree, and she seeks appellate attorney fees and expenses.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7). We affirm the district court's decree with modifications.

■ I. *Physical Placement of the Children.* Jamie first argues he is better able than Patsy to minister to the long-term best interests of the children, and therefore, he should be granted physical placement of the children. We are not persuaded.

When the parties separated, the district court entered a temporary custody order placing the children in the parties' joint custody. The children were placed in Jamie's care for four days per week and in Patsy's care for the remaining three days of every week. Because this arrangement proved unworkable during the school year, the parties agreed that the children should stay at Patsy's home, where Jamie Lee attended school. Jamie exercised visitation on the weekends. When the school year

purpose of calculating his child support obligation using the child support guidelines. *See generally In re Marriage of Close*, 478 N.W.2d 852 (Iowa App.1991); *see also In re Marriage of*

*Heinemann*, 309 N.W.2d 151, 153 (Iowa App. 1981) (a parent's child support obligation should not be so burdensome the parent is required to work overtime to satisfy it).

came to a close, the parties resumed the ordered four-day-three-day arrangement.

However, in the summer of 1990, MacKenzie was diagnosed with leukemia. Based on this change in circumstances, the trial court amended its first temporary custody order and awarded one child to each parent. Jamie Lee was placed in Jamie's care, and MacKenzie was placed in Patsy's care. This was apparently done to help the parties provide MacKenzie with the amount and consistency of care she required and provide Jamie Lee with the concentrated attention he required.

As a result of this placement scheme, Patsy acquired the necessary experience and training to properly meet MacKenzie's peculiar health care needs. The district court, in awarding physical placement of the children to Patsy, reasoned that Patsy's experience and training in caring for MacKenzie, coupled with Patsy's ability to spend more time with the children, better enable her to minister to MacKenzie's needs. Because the two children enjoy a close sibling relationship, the court further concluded they should not be separated. As such, both children were awarded to Patsy.

■ The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3) and in *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983), and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration," the court's determination of what will be in the long-term best interest of the children. *In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interest of the children is which parent will perform better in raising them; gender is irrelevant and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App.1985).

We believe the district court's placement order is in the long-term best interest of the children. In arriving at our decision, we are mindful that our concern for MacKenzie's short-term special needs should not be allowed to completely consume our concern that the children's long-term general developmental needs be met. While both parents clearly love the children, Patsy's demonstrated dedication to the children assures us that she will provide a stable and nurturing environment for the children. We, therefore, affirm the physical placement provisions of the district court's decree.

■ II. *Visitation.* Jamie next argues the visitation provisions of the dissolution decree are excessively restrictive and should be liberalized. The decree provides Jamie with visitation on (1) the third weekend of every month, from 7:00 p.m. on Friday to 4:00 p.m. on Sunday, (2) Thanksgiving and Christmas every other year on an alternating basis, from 9:00 a.m. to 9:00 p.m., (3) birthdays and other holidays, provided an agreement is made regarding the time, place and length of the visitation, and (4) from June 15 to August 15 each year. Both parties agree that this provision is too restrictive.

■ In establishing visitation rights, our governing consideration is, once again, the best interest of the children. *Petition of Deierling*, 421 N.W.2d 168, 171 (Iowa App. 1988). In this regard, we have stated that, generally, liberal visitation rights are in the children's best interest. *In re Marriage of Kerber*, 433 N.W.2d 53, 54 (Iowa App. 1988); *In re Marriage of Muell*, 408 N.W.2d 774, 777 (Iowa App.1987). Iowa Code section 598.41(1) (1991) provides in pertinent part:

> The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent, and which will encourage

parents to share the rights and responsibilities of raising the child.

We find the restrictive nature of the decree's visitation provisions fails to promote the goal espoused by section 598.-41(1). We, therefore, expand Jamie's visitation rights to assure both MacKenzie and Jamie Lee the maximum continuing physical and emotional contact with their father. We grant Jamie visitation on alternating weekends from 5:00 p.m. on Friday to 5:30 p.m. on Sunday. Furthermore, we grant Jamie visitation from 9:00 a.m. to 9:00 p.m. on the alternating holidays of New Years Day, Easter, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas. Jamie shall have visitation with each child from 9:00 a.m. to 9:00 p.m. on each child's birthday, every other year, the first year for Jamie being 1993. Jamie shall have visitation from 9:00 a.m. to 9:00 p.m. on Father's Day and Jamie's birthday every year. Finally, the decree's provisions for summer visitation remain the same. Jamie shall have visitation from June 15 to August 15 every year. Additional visitations for special events, other holidays or overnight stays shall be permitted providing the parties or their attorneys of record agree to the times, places, and length of the visits. Moreover, these provisions are subject to modification by the parties or their attorney's of record without approval of the court. We implore the parties to make good faith efforts in accommodating each others needs, reasonable desires and schedules.

III. *Child Support and Medical Insurance.* On cross-appeal, Patsy argues her child support payments should be increased and Jamie should be required to pay expenses not covered by the medical insurance policy he has been ordered to maintain. We decline to make such modifications to the parties' decree.

A. *Child Support.* The district court ordered Jamie to pay Patsy $180.00 per month for each child. Patsy requests an award of $479.44 per month for two children and $332.52 when only one child remains eligible for support. She claims these figures are generated by the child support guidelines. We disagree.

We decline to modify the decree by increasing Jamie's child support obligation. We believe the amount of support awarded by the district court is in line with that dictated by the child support guidelines. Using Jamie's net income of no greater than $968.00 per month and Patsy's income of zero, the child support guidelines provide 37.1 percent of Jamie's income should be paid to Patsy to satisfy his support obligation. Jamie's net income of no greater than $968.00 multiplied by 37.1 percent equals $359.13. The trial court awarded Patsy $360.00 per month. Under the parties' decree, Jamie is left with $608.00 per month in net income after paying child support. The district court found Jamie's monthly expenses to be $1,224.94. Patsy would be well advised to seek employment in order to provide further support for her children. Both parents have a legal obligation to support their children. *In re Marriage of Fleener,* 247 N.W.2d 219, 221 (Iowa 1976). We affirm the district court's child support award.

■ B. *Insurance.* The district court ordered both parties to maintain adequate medical and hospital insurance for the children. Patsy requests that, in addition, Jamie be ordered to pay one-half of all medical, dental, orthodontal and optometry expenses not covered by the policy. We believe the district court's decree is adequate in this regard under the circumstances of this case. We decline to modify it as Patsy requests.

IV. *Property Distribution.* Additionally, Patsy challenges the district court's property distribution. The parties are "entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Havran,* 406 N.W.2d 450, 452 (Iowa App.1987). The distribution of the property of the parties should be that which is equitable under the circumstances after consideration of the criteria codified in Iowa Code section 598.-21(1). *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983).

In light of these considerations, we find the property distribution provisions of the parties' decree to be equitable. We affirm.

 V. *Appellate Attorney Fees.* Finally, Patsy requests an award of appellate attorney fees in the amount of $1,644. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern*, 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App.1981). We order that each party shall be responsible for his or her own appellate attorney fees.

The costs of this appeal are taxed equally between the parties.

For all the reasons stated, we affirm the district court's judgment as modified.

AFFIRMED AS MODIFIED.