# IN THE COURT OF APPEALS OF IOWA

No. 13-1210
Filed April 30, 2014

**NICHOLAS W. O'BRIEN,**
　　　　Petitioner-Appellant,

vs.

**ELIZABETH WYGLE,**
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Howard County, Richard D. Stochl, Judge.


　　　　An unmarried father appeals the physical care and visitation provisions of a custody decree. **AFFIRMED.**


　　　　Roger Sutton of Sutton Law Office, Charles City, for appellant.

　　　　Christopher O'Donohoe of Elwood, O'Donohoe, Braun, & White, New Hampton, for appellee.


　　　　Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

Nicholas O'Brien appeals the order granting physical care of their two daughters to Elizabeth Wygle. He argues the district court should have ordered joint physical care. In the alternative, he asks for additional visitation. As we find the grant of physical care to Elizabeth and the visitation schedule to be in the children's best interest, we affirm.

## I.    Background Facts and Proceedings

Nicholas and Elizabeth lived together for three and one-half years but never married. They had two children together, D.O. and L.O. At the time of trial, D.O. was three years old and L.O. was two years old. Nicholas and Elizabeth lived together for ten months after the birth of L.O, but separated because they could no longer get along. Nicholas now shares a house in Elma with two male friends. Elizabeth lives with a new boyfriend in Fredericksburg. The two communities are about thirty-six miles apart.

Since the separation the children have lived with Elizabeth and Nicholas has had open visitation. When the children visit Nicholas, all three stay at his parents' residence just outside of Cresco because Nicholas's own house is not set up for children. He testified he was waiting to move into a more suitable residence until he received the custody decision of the district court. Both Elizabeth's and Nicholas's parents are heavily involved in the children's lives and help facilitate communication between Elizabeth and Nicholas.

On September 19, 2012, Nicholas filed a petition for joint custody and for physical care to be placed with him. On January 17, 2013, the district court

entered a temporary custody and visitation order. The temporary order granted joint custody, placed physical care with Elizabeth, and allowed liberal visitation for Nicholas. The district court held trial on May 15, 2013. At trial, Nicholas asked for joint custody and shared care of the children. Elizabeth sought physical care of the children with visitation for Nicholas. The district court entered its order on July 24, 2013. The court awarded Nicholas and Elizabeth joint legal custody. It granted Elizabeth physical care of the children and entered a visitation schedule subject to the parties' mutual agreement to a different schedule. Nicholas now appeals.

## II.     Standard of Review

Issues ancillary to a paternity determination are tried in equity. *See* Iowa Code § 600B.40 (2011). We review de novo decisions on child custody. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988) (noting legal analysis employed in custody cases involving unmarried parents is the same as in dissolution cases). "It is axiomatic that we are concerned above all else in child custody cases with the best interests of the child." *Id*. We aspire to place the children in the environment most likely to bring them to healthy physical, mental and social maturity. *Id*. We are not bound by the district court's factual findings, but we give them weight. *Id*.

## III.    Analysis

**A. Elizabeth has been the primary caregiver of the children since their births. Did the district court act appropriately in granting her physical care?**

The first question in this appeal is whether the court acted appropriately in declining to grant Nicholas and Elizabeth joint physical care of their daughters. If joint legal custody is ordered, the district court may grant the parents joint physical care, upon the request of either party, or may choose one parent to be the primary caretaker of the children. *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). Joint physical care is a viable option when it is in the children's best interests, but no presumption exists in favor of joint physical care. *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007) (explaining factors in Iowa Code section 598.41(3)[1] provide guidance to courts considering physical-care issues). Physical care is defined as "'the right and responsibility to maintain a home for the minor child and provide for the routine care of the child.'" *Id.* (quoting Iowa Code section 598.1(7)).

Iowa courts consider the following nonexclusive list of factors in determining whether to grant joint physical care: (1) the historical care giving arrangement for the children between the parents, (2) the ability of the spouses to communicate and show mutual respect, (3) the degree of conflict between the spouses, and (4) the degree to which the parents are in general agreement about

---

[1] The statutory factors include: whether each parent would be a suitable custodian; whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents; whether the parents can communicate with each other regarding the child's needs; whether both parents have actively cared for the child before and since the separation; whether each parent can support the other parent's relationship with the child; whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity; whether one or both the parents agree or are opposed to joint custody; the geographic proximity of the parents; whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation; a history of domestic abuse;

their approach to parenting. *In re Marriage of Hansen*, 733 N.W.2d 683, 697–99 (Iowa 2007).

Neither party disputes that Elizabeth has been the primary caretaker of the children. While still living together, Elizabeth did the feeding and most of the diaper changes, while Nicholas assumed a more limited parenting role. Elizabeth testified: "He usually went to work, came home and went to bed after eating, so I actually didn't get much help. And it took him from May until that next January to actually change a poopy diaper." Nicholas confirmed it took him several months before he started helping with diaper changes: "You know, I had to work into that."

After the parties separated, the temporary order provided Nicholas with the opportunity to enlarge the amount of time he spent caring for his daughters. On weeks where Nicholas did not have weekend visitation, he was granted Sunday through Wednesday visits under the temporary order. But in the eight weeks he had this opportunity, he only took the girls twice. While we understand bad weather affected one of those opportunities, there were five other weeks when he declined visitation. Nicholas claims a situation with the daycare prevented him from taking the children. In our review of the record, it appears Nicholas was more concerned about paying for daycare when the children did not attend than spending time with them.

The record also suggests Nicholas has had only one overnight visit alone with the children since the separation. His mother and father play a substantial role in looking after the girls when they are with Nicholas. In his brief, Nicholas

asserts he is being punished by the court for relying on his parents for help with the children. We see nothing punitive in the district court's order. While the value of extended family in the children's lives is undeniable, the problem is Nicholas has not taken responsibility to stand on his own as a father. Nicholas testified he was waiting for the court's decision before securing a residence appropriate for the children to live in. His reluctance to make that investment in any regard underscores the correctness of the court's physical care decision.

We conclude the approximation of the care-giving from both before and after the parents' separation weighs heavily against joint physical care and toward placing physical care with Elizabeth. *See Hansen*, 733 N.W.2d at 697 (noting non-determinative approximation principle ensures "any decision to grant joint physical care is firmly rooted in the past practices of the individual family").

Moreover, Elizabeth and Nicholas have a hard time communicating with each other due to the "joint hate between [them]." Because of their conflicts, they often use their parents as intermediaries when dealing with issues relating to the girls. The parties' animosity and difficulty in exchanging information about the children would make a joint physical care arrangement unworkable.

Finally, the record does not offer much insight into the degree to which Elizabeth and Nicholas agree or disagree in their approach to parenting. If anything, Nicholas has not formulated his own approach to parenting because he has ceded so much hands-on interaction to his parents. We find, considered together, the *Hansen* factors support the district court's decision to place physical care with Elizabeth.

**B.    Is the visitation schedule in the children's best interests?**

As an alternative to his argument for joint physical care, Nicholas claims the district court acted appropriately in not giving him maximum visitation under Iowa Code section 598.41(1)(a).  When establishing visitation rights, our guiding light remains the children's best interests.  *In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992).  Generally, liberal visitation serves children's best interests.  *Id.*  Although section 598.41(1)(a) directs courts to reach a custody determination with liberal visitation that "will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents," that directive is in the context of what "is reasonable and in the best interest of the child."

The final order granted Nicholas visitation on alternate weekends, two one-week sessions during summer vacation, and alternating holiday visitation.[2] On appeal, he asks for two additional weeks of summer visitation, for a total of "four (4) alternating weeks in the summer."  And he requests "at least the minimum of the temporary visitation Order with shared holidays at Christmas, Thanksgiving, Spring Break, and other appropriate times."

It is unclear what Nicholas means by "shared holidays" in his appellate brief.  At trial, he testified his position on holidays was "just rotate back and forth." The final order provides for such "rotating" holiday visitation.

We believe the district court's permanent visitation order is appropriate and will give Nicholas significant time with the children while maintaining the

---

[2] For example, Nicholas will have the children on Memorial Day and Labor Day in even numbered years and Memorial Day, Independence Day, and Thanksgiving in odd numbered years.

continuity of their care and minimizing disruptions in their schedules. But, if the parents mutually agree to change the visitation schedule, they are free to do so.

### C.  Is Nicholas entitled to attorney fees?

Nicholas requests $3000 in appellate attorney fees. An award of attorney fees is not a matter of right, but sits within the court's discretion. *In re Marriage of Roberts*, 545 N.W.2d 340, 345 (Iowa Ct. App. 1996). We consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *In re Marriage of Miller*, 524 N.W.2d 442, 445 (Iowa Ct. App. 1994). Because Nicholas is prosecuting, not defending this appeal, and has the financial ability to pay his own attorney, we reject his request for appellate attorney fees. We determine each party should pay his or her own attorney fees for this appeal. We also direct Nicholas to pay the costs of the appeal.

**AFFIRMED.**