# IN THE COURT OF APPEALS OF IOWA

No. 20-0779
Filed June 30, 2021

IN RE THE MARRIAGE OF KATIE ANNE MUFF JOHNSEN
AND MATTHEW JAMES JOHNSEN

Upon the Petition of
KATIE ANNE MUFF JOHNSEN,
        Petitioner-Appellant/Cross-Appellee,

And Concerning
MATTHEW JAMES JOHNSEN,
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Harrison County, Margaret Reyes,

Judge.


        The wife appeals and the husband cross-appeals from the decree

dissolving their marriage. **AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED**

**ON CROSS-APPEAL.**


        Drew H. Kouris, Council Bluffs, for appellant.

        Amanda Heims, Council Bluffs, for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Katie Johnsen appeals and Matthew (Matt) Johnsen cross-appeals from the decree dissolving their nine-year marriage. Katie challenges the district court's property division and asks us to modify the decree to prohibit the parties from drinking alcohol while caring for their children, grant a right of first refusal after four hours, and reduce Matt's visitation with their children. Matt argues the parties should have joint physical care of their children.

## I. Background Facts and Proceedings

The parties married in 2010 and have two children together, born in 2010 and 2016.[1] The petition for dissolution of marriage initiating this case was filed in 2018, with trial held in 2019 and the district court issuing a dissolution decree in 2020. Both parties filed extensive post-trial motions, and the court made several modifications to its decree in a post-trial ruling. Relevant to this appeal, the decree after the post-trial ruling divided the marital property, granted the parties joint legal custody of the parties' children, placed physical care of the children with Katie, awarded visitation to Matt, did not impose a "no drinking" requirement on the parents while caring for the children, and granted a right of first refusal when either parent is unable to supervise the children for at least twenty-four hours during that parent's parenting time. Katie appeals, and Matt cross-appeals.

## II. Standard of Review

We review dissolution-of-marriage cases de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "We give weight to the findings of

---

[1] Katie has another child from a prior relationship. This child splits time between Katie and the child's father.

the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *Id.* "We will disturb the district court's 'ruling only when there has been a failure to do equity.'" *Id.* (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)).

## III. Division of Marital Property

Katie raises two issues regarding the district court's division of the parties' marital property. First, she challenges how the district court assigned the value of a hoop building to be constructed on the parties' homestead. Second, she asserts the court's ultimate distribution of the marital property was inequitable.

### A. Hoop Building

At trial, Matt testified he was in the process of constructing a hoop building on the homestead for use in his livestock operation. Katie submitted a broker's opinion on the value of the homestead, which included an estimated value of the hoop building of $90,000.00 upon completion. In the original decree, the district court accepted the broker's opinion and valued the hoop building at $90,000.00 as a marital asset. In the post-trial ruling, the court determined $60,000.00 of the hoop building's value was already calculated in the market value of Jumper Cattle,[2] leaving $30,000.00 of value separate from Jumper Cattle. Katie asserts the reason for this change in the treatment of the hoop building is "unclear."

Matt testified he already paid for a concrete pad and a down payment for the building, and a client would pay approximately $60,000.00 to finish construction

---

[2] Jumper Cattle is the name of the cattle-raising operation of the parties. The record is not clear whether Jumper Cattle is a separate entity or a trade name, but it is a marital asset regardless of the nature of the ownership of it.

of the hoop building. Matt also testified the client paid for the hoop building to compensate Matt for his livestock services, which is reflected in an exhibit of accounts receivable for Jumper Cattle showing this client owed a total of $123,870.00. This is consistent with Matt's testimony that he at least occasionally barters with clients and other farmers in lieu of receiving cash for the property and services he provides. Considering Matt's testimony and the exhibits, we agree that $60,000.00 of the hoop building's value is reflected in the assets of Jumper Cattle, leaving $30,000.00 in remaining value as a separate marital asset.

## B.    Division of Marital Property

Katie argues the division of marital property is inequitable because the net value of property awarded to Matt is significantly higher than the net value of property awarded to her. She complains the court calculated the "Net Value" of the parties' assets by deducting any encumbrances from the assets' market value, and from this "Net Value" the court again deducted most—but not all—of the debt assigned to each party to arrive at a "Net Asset Award to Each Party."

"In dissolution-of-marriage cases, marital property is to be divided equitably, considering the factors outlined in Iowa Code section 598.21[(5)]." *McDermott*, 827 N.W.2d at 678 (alteration in original) (quoting *In re Marriage of Hansen*, 733 N.W.22d 683, 702 (Iowa 2007)). "An equitable distribution of marital property, based upon the factors in 598.21(5), does not require an equal division of assets." *Id.* at 682 (quoting *In re Marriage of Kimbro*, 826 N.W.2d 696, 703 (Iowa 2013)). "Equality is, however, often most equitable; therefore, we have repeatedly insisted upon the equal or nearly equal division of marital assets." *Id.*

It does not appear the parties have any significant disagreement over the value of assets and debts. Their disagreement lies in the distribution of those assets and debts, or, more specifically, the amount of any payment needed to achieve equity after such distribution. On our de novo review of the record and the district court's calculations, we agree with Katie that the court may have improperly deducted debt a second time from the net value of certain assets, which creates a distorted view of the parties' total "net" awards. Regardless of whether we are properly interpreting the district court's decree, we will recalculate the respective net worths of the parties after distribution of the assets and debts to them without counting debt twice.

In addition to recalculating the respective net worths of the parties, we also find it necessary to slightly modify the distribution of the Jumper Cattle assets and debts. It appears the district court awarded a small percentage of the Jumper Cattle assets to Katie, but then appeared to award her a corresponding amount of Jumper Cattle debt. Regardless of why this was done or whether we are correctly interpreting the district court's decree, we find no equitable reason to carve up the Jumper Cattle assets and debts. Instead, we award all Jumper Cattle assets to Matt, but also make him responsible for all Jumper Cattle debt.

Due to the fact we have some confusion as to how assets and debts of the parties were divided by the district court and whether an equalization payment was ordered, we replace the district court's distribution order with that set forth in this opinion. Based on our de novo review, we find it equitable to distribute the assets and debts of the parties as follows after valuing each asset and debt as stated:

| Description of Asset/(Debt) | Katie | Matt |
|---|---|---|
| Homestead | | $175,000.00 |
| Homestead mortgage | | ($75,642.66) |
| Hoop building | | $30,000.00 |
| 2009 Hummer | | $11,442.00 |
| 2009 Hummer debt | | ($11,442.00) |
| 2017 Ford Explorer | $21,552.00 | |
| 2017 Ford Explorer debt | ($21,552.00) | |
| Life insurance | | $206.00 |
| Ag Unlimited | | $230,000.00 |
| Ag Unlimited debt | | ($228,436.30) |
| Jumper Cattle | | $1,374,841.00 |
| Jumper Cattle debt | | ($1,342,029.00) |
| Hedge fund account | | $78.32 |
| Matt's bank accounts | | $2,030.45 |
| IPERS | $16,277.00 | |
| Katie's bank accounts | $200.00 | |
| Household contents | | $3,450.00[3] |
| Other assets | $5,200.00[4] | |
| Credit card debt | ($5,167.84) | ($5,167.84) |
| Total Net Worth | $16,509.16 | $164,329.97 |

We note that the above distribution of assets and debts results in similar values of net worths awarded to the parties as under the district court's distribution. We further note that, in spite of the fact this distribution results in Matt's net worth being nearly ten times that of Katie's, the district court ordered Matt to make only a fairly small property settlement payment to Katie that did not approximate equalization of the parties' respective net worths.[5]

---

[3] These assets awarded to Matt are referenced in the district court's decree. The parties express no confusion over which household personal property items were awarded to Matt, so the district court's award of such items remains unchanged by this order.

[4] These assets awarded to Katie are listed in the district court's decree. This opinion does not change the award of the identified assets to Katie.

[5] The district court allowed Matt to satisfy a portion of the property settlement payment by making Matt responsible for payment of Katie's share of the joint credit card debt. We modify the district court's decree to remove Matt's obligation to pay

In setting the property settlement payment obligation owed by Matt, the district court expressed concern that Matt was assigned almost all marital debt. While we understand the district court's concern, we note "the allocation of marital debts inheres in the property division." *In re Marriage of Johnson*, 299 N.W.2d 466, 467 (Iowa 1980). "[I]t is not inequitable to order [one] party to be responsible for the entire amount of the debt as long as the overall property distribution is equitable." *In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006). The court correctly noted Matt received almost all marital debt, but Matt also received almost all marital assets. Most of the marital debts encumber business assets Matt received, and Matt can and should be able to use his business assets to generate income and pay down the debt assigned to him. We find nothing unusual about the debt or other circumstances of the marriage that would justify awarding Matt a substantial majority of the marital net worth. Therefore, we find approximate equalization of the parties' respective net worths to be equitable in this case and modification of the district court's decree is necessary to achieve such equity.

As for the details to achieve equity, Katie asks us to order the homestead be sold with the proceeds equitably divided between the parties. Her position on appeal is in contrast to her position for the original decree, when Katie persuasively argued the homestead should be awarded to Matt rather than sold because the homestead is critical to Matt's livestock operations, will require additional costs in order to sell, and is important to the parties' children. In her post-trial motion and

Katie's share of the credit card debt. Each party shall remain responsible for fifty percent of such debt and the property division payment provided for in this opinion does not affect each party's responsibility for that party's share of the credit card debt.

now on appeal, Katie expresses concern Matt will declare bankruptcy and limit his obligation to make any property-equalization payment. However, the prospect of bankruptcy was discussed at the dissolution trial, and Matt explicitly testified he "will never take bankruptcy." The district court found his testimony on this point credible, and we place weight on this finding. *See McDermott*, 827 N.W.2d at 676. Based on Matt's testimony and the reasons Katie provided for the dissolution trial, we agree with the district court that the homestead should be awarded to Matt rather than ordered to be sold.

As noted, we find it equitable to order Matt to make a property settlement payment to Katie that will result in approximate equalization of the parties' respective net worths after the payment. *See id.* at 682 (holding that, while equitable distribution of marital property does not require equal division, equality is often most equitable). Therefore, we modify the district court's order and require Matt to pay a property settlement payment to Katie of $74,000.00 within ninety days of the issuance of procedendo. Regarding Katie's concerns about bankruptcy, we note that Matt has no other cash obligations under the decree and he has sufficient equity in the homestead and hoop building to use for financing this equalization payment if needed.

Except as expressly modified by this opinion, we affirm all other aspects of the district court's decree concerning property division.

## IV. Consumption of Alcohol

Katie asks us to modify the decree to expressly prohibit the parties from consuming alcohol while caring for the children. The record shows Matt drinks to excess at times. Matt testified he regularly drinks alcohol, and one of Matt's friends

testified Matt can drink up to twelve beers a night. A temporary order in this proceeding prohibited the parties from drinking "alcohol during their parenting time with the minor children." The district court found Matt in contempt for violating this provision and ordered Matt to undergo a substance-abuse evaluation in lieu of jail time. The evaluation determined Matt has "a low probability of having a substance use disorder" and did not recommend treatment.

In its post-trial ruling, the district court refused to add a provision restricting alcohol consumption, stating:

> While Matt's [substance-abuse] evaluation showed some defensiveness concerning his drinking, the court previously found that the evidence at trial showed that Matt lacks insight into his drinking. The evidence didn't show that Matt's drinking had adversely affected his children and didn't support the court restricting Matt from drinking any alcohol in the presence of his children. The court finds ordering that such a provision would only serve to continue rancor between the parties and lead to additional litigation before the court. As a joint legal custodian of his children, Matt is under an obligation to act in the best interests of the health and welfare of his children, including his use of alcohol.

On our de novo review, we agree with the district court and deny Katie's request to modify the decree to prohibit the consumption of alcohol during the parties' parenting time.

## V. Right of First Refusal

The district court granted the parties a right of first refusal, providing each party "the right to have the minor children when the other parent will be away from the minor children for a period in excess of [twenty-four hours]." Katie asks us to modify the decree to provide a right of first refusal when the other parent will be away from the minor children for a period in excess of four hours. The temporary order contained a right of first refusal with a four-hour period, and even Katie in her

brief to us acknowledges the four-hour period did "not always [go] smoothly." In denying Katie's request to use a four-hour period, the district court found a four-hour period is inappropriate because Matt testified his livestock chores may take him longer than four hours and he would rather rely on the paternal grandmother for childcare help at his homestead during his parenting time, especially since he can begin his chores before the children even wake. We agree and note Katie may have similar issues with a four-hour period because she places the younger child in daycare while she works and because she must coordinate shared care for her child from a prior relationship. Additionally, it is unclear how the proposed four-hour period would apply as the children age and they spend more time away from the parents at school or with friends. The court also found a four-hour period "will only result in additional conflict." We agree, as such a short period may encourage the parties to monitor when and why the other parent is away from the children and to manipulate schedules to maximize parenting time instead of acting in the children's best interests. Therefore, we deny Katie's request to modify the right of refusal to take effect after four hours.

## VI.     Physical Care & Visitation

The district court granted physical care of the parties' children to Katie with Matt having visitation as follows: during the week of the first and third weekend[6] of each month, beginning Wednesday evening and ending Friday morning; and during the week of the second, fourth, and fifth (if applicable) weekend of each month, beginning Thursday evening and ending Sunday evening. Both parties

---

[6] Under the post-trial ruling, "The first weekend is defined as the first Friday of the month."

appeal the physical care determination, with Matt requesting joint physical care and Katie requesting a reduction in Matt's visitation.

### A.    Joint Physical Care

Under a joint physical care arrangement, "both parents have rights and responsibilities toward the child including but not limited to shared parenting time with the child, maintaining homes for the child, providing routine care for the child and under which neither parent has physical care rights superior to those of the other parent." Iowa Code § 598.1.  Consideration of joint physical care is based on the best interests of the children.  *Hansen,* 733 N.W.2d at 695.  "Factors often of importance in determining the viability of joint physical care include an overriding interest in stability and continuity, the degree of communication and mutual respect, the degree of discord and conflict prior to dissolution, and the extent to which the parties agree on matters involving routine care." *Id.* at 700.

Matt asserts the parties have successfully co-parented the children since birth and continuing through the divorce proceedings, and he downplays acrimony between the parties.  The district court rejected joint physical care, pointing to "the lack of agreement" and "mutual respect."  The parties testified to multiple parenting disagreements, including when to seek medical care for the younger child and the extent of the older child's involvement in wrestling.  Matt's alcohol consumption caused friction between the parties throughout the marriage, and he shows no desire to reduce his alcohol consumption after divorce outside of his parenting time.  The lack of respect between the parties is evident in the text messages in the record and in Matt's defensiveness during trial.  We agree with the district court that joint physical care is not in the children's best interest.

**B.** **Matt's Visitation**

Katie asks us to reduce Matt's weekday visitation to one overnight each week. Katie's primary complaint is that the district court allowed Matt to have one overnight visitation during the week in the initial decree but added a Wednesday overnight visitation in the post-trial ruling despite considering no new evidence. Katie is correct that a post-trial motion is not appropriate if it "amounts 'to no more than a rehash of legal issues raised and decided adversely' to the movant." *Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 641 (Iowa 2013) (quoting *Explore Info. Servs. v. Iowa Ct. Info. Sys.*, 636 N.W.2d 50, 57 (Iowa 2001)); *see also In re Marriage of Bolick*, 539 N.W.2d 357, 361 (Iowa 1995) (stating post-trial motions "are not vehicles for parties to retry issues based on new facts"). However, both parties filed extensive post-trial motions, and the district court made several modifications to the initial decree in its post-trial ruling. Because the post-trial ruling changed the circumstances of the parties' divorce, it was appropriate for the district court to reconsider visitation in light of the other changes even without new facts in the record.

Furthermore, we examine visitation de novo. *See In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992). Our governing consideration is the best interests of the children, and liberal visitation rights are generally in the children's best interests. *Id*. Matt has taken an active role in raising the children, and the record shows no serious concerns with Matt's fitness as a parent or with the feasibility of the visitation schedule. Additionally, Katie provides no evidence to support her assertion to us that the addition of Wednesday overnight visitation

is excessively disruptive to the children.  Therefore, we reject Katie's request to reduce Matt's visitation.

**VII.    Conclusion**

In order to achieve equity between the parties, we order Matt to pay to Katie $74,000.00 within ninety days of the issuance of procedendo.  We reject Katie's requests to reassign the value of the hoop building, order the parties to abstain from consumption of alcohol during their parenting time, grant a right of first refusal after four hours, and reduce Matt's visitation.  We also reject Matt's request to grant the parties joint physical care of the parties' children

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**