**IN THE COURT OF APPEALS OF IOWA**

No. 24-1090
Filed February 5, 2025

**IN RE THE MARRIAGE OF LAURA LEIGH DEWHURST
AND BRYAN MATTHEW DEWHURST**

**Upon the Petition of
LAURA LEIGH DEWHURST n/k/a LAURA LEIGH IMSLAND,**
        Petitioner-Appellee,

**And Concerning
BRYAN MATTHEW DEWHURST,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Ashley Sparks, Judge.


        A father appeals the district court's order modifying his parenting time provided in the divorce decree between him and his former wife, arguing the modification is not in the children's best interests.  **AFFIRMED.**


        Nicole S. Facio of New Point Law Firm, PLC, Ames, for appellant.

        J. Michael Boomershine of Sullivan & Ward, P.C., West Des Moines, for appellee.


        Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

Bryan Dewhurst and Laura Imsland have joint legal custody of their three children. Bryan is the physical care parent and sought a modification of parenting schedule in the parties' divorce decree due to his planned move from Hubbard to Forest City. The district court issued an order modifying the parenting schedule, and the parties moved to reconsider, enlarge, or amend. The district court granted both motions in part and denied both motions in part. Bryan now appeals, arguing the modified parenting schedule is not in the children's best interests. Laura requests reasonable appellate attorney fees.

## I. Background Facts and Proceedings

In 2015, Bryan and Laura were divorced and agreed to joint legal custody with Laura having primary physical care of the parties' three children: M.G.D., born in 2006; M.W.D., born in 2008; and H.D.D., born in 2012. Since that time, the parties have been very litigious towards each other. On January 14, 2020, an order modifying the divorce decree was entered which granted Bryan primary physical care of the children. We affirmed that order on Laura's appeal. *See In re Marriage of Dewhurst* (*Dewhurst I*), No. 20-0123, 2020 WL 4814159, at *1 (Aug. 19, 2020). Another order modifying the divorce decree was entered in 2021, which adopted the stipulation of the parties modifying some visitation provisions for Laura.

In February 2023, Bryan initiated an application for rule to show cause against Laura due in part to the oldest child's refusal to live with Bryan. The district court granted that application in part and denied in part, finding Laura had undermined Bryan's disciplinary actions against one of the children but not holding

her liable for the oldest child's actions. We affirmed that order on Bryan's appeal. *See In re Marriage of Dewhurst* (*Dewhurst II*), No. 23-1804, 2024 WL 3688741 (Aug. 7, 2024).

Laura followed that contempt action by filing a petition to modify the divorce decree in March. Bryan counterclaimed, asserting a significant change in circumstances in anticipation of a move from Hubbard to Forest City. Agreeing the move created a substantial change in circumstances, the district court modified the divorce decree accordingly, which we now review on appeal.

Bryan owns a wealth management company and has lived with his current wife in Hubbard since 2018. Laura, a caterer, lives in Hubbard with her current husband, and they have one child together, who was six years old at the time of trial. The parties' children are academically successful and heavily involved in the Hubbard community and religious activities with their parents. The parties do not co-parent well, which the district court stated is "well documented," citing their history of court filings and divorce decree modifications.

In its 2020 modification order, the district court characterized Laura's "pattern of flagrant behaviors and interference" as negatively impacting Bryan's ability to parent the children. To this day, the parties continue to "bicker over almost everything."

In November 2023, Bryan decided to plan a move from Hubbard to Forest City, which prompted this modification action. Forest City is roughly 100 miles away from Hubbard. Because Laura enjoyed some parenting time on school nights, the district court adopted a parenting schedule that involved less travel

during the week. Laura was given more parenting time on weekends, holidays, and summers to make up for the lack of weekday parenting time.

Under the newly modified schedule, Laura has weekend visitation every weekend except one weekend per month. Previously, Laura and Bryan alternated weekends. The children now reside with Laura during the summers with Bryan receiving visitation every other weekend and each parent being entitled to one two-week, uninterrupted parenting time per summer. And where the parties previously alternated holiday parenting time every year, Laura now enjoys parenting time every MLK Day, Memorial Day, and Labor Day weekends, as well as Good Friday, spring break, and winter break.

## II. Standard of Review

Appeals of the district court's modifications of the child visitation provisions of a dissolution decree are equity proceedings. *In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998). Consequently, our review of both the facts and the law is de novo. *Id.*; Iowa R. App. P. 6.907. Although we make our own findings of fact, when considering the credibility of witnesses we give weight to the findings of the trial court even though we are not bound by them. *In re Marriage of Salmon*, 519 N.W.2d 94, 95 (Iowa Ct. App. 1994). The best interests of the children is the controlling consideration. *Id.* at 95–96.

## III. Discussion

Bryan argues the modified parenting schedule is not in the best interest of the children. He takes issue with the district court fashioning a schedule which would "result[] in Laura having 135 to 145 overnights throughout the year, compared to the 150 to 160 she had previously." In particular, he requests the

schedule be modified so that (1) an "every other weekend schedule" is used during the school year, (2) the children are exchanged every two weeks during the summer, and (3) most holidays are evenly split between Laura and Bryan and alternating between even and odd numbered years.

In child custody cases, the first and governing consideration of the courts is the best interests of the child. Iowa R. App. P. 6.904(3)(n). A child's best interests are served by allowing both parents an "opportunity for maximum continuous physical and emotional contact" with their children, notwithstanding "direct physical or significant emotional harm to the child . . . from this contact." Iowa Code § 598.1(1) (2023).

In modification actions concerning visitation, Iowa courts generally award the non-custodial parent liberal visitation rights as a means of accomplishing the child's best interests. *See In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992). "Physical care issues are not to be resolved based upon perceived fairness to the *spouses*, but primarily upon what is best for the *child*." *In re Marriage of Hansen,* 733 N.W.2d 683, 695 (Iowa 2007). But a child's best interests are served by allowing both parents an "opportunity for maximum continuous physical and emotional contact" with their children, notwithstanding "direct physical or significant emotional harm to the child . . . from this contact." Iowa Code § 598.1(1); *cf. Stepp*, 485 N.W.2d at 849 ("[G]enerally, liberal visitation rights are in the children's best interest.").

Bryan argues the modified schedule is not in the children's best interests because the district court "severely limited [his] opportunity to have parenting time with the children" which "affects his ability to have quality interactions with the

children outside of school or the ability to involve extended family who live out of town."  While Bryan frames his appeal as a best interests issue, we interpret it as a fairness argument, arguing "the district court seemed more focused on being fair to Laura."  He contends that the district court was focused on being fair to Laura when it only modified the schedule to decrease her parenting time by roughly ten percent.

But as Bryan recognizes, we look to the children's best interests and liberal visitation is generally in their best interests.  And we are not convinced that, because most of his parenting time is during school weeks, he will lack quality time with the children.  Nor are we concerned that such a schedule will prevent the children from integrating into their new home environment.  While we certainly want to foster a smooth transition into the children's new city and schools, Bryan's argument overlooks the importance of maintaining contact and connections with the city and friends with which they are already familiar.  A physical care schedule that provides ample time and ability for the children to maintain those existing connections will support them as they start a new life in Forest City.

Accordingly, we concur with the district court that the modified order properly reflects the children's interests in maintaining contact with their mother and existing community while also encouraging them to build new relationships in Forest City.  Under the modified order the children are under Bryan's care during school weeks and one weekend a month.  Since the children will not be in Hubbard during the weekdays, placing them with Laura three weekends a month ensures that their support systems in that community don't wither.

That is an important consideration. While the district court found, and we agree, that there is no indication that Bryan's move was motivated by animus towards Laura, it will nonetheless be a stressful transition for the children because they are well-established in Hubbard. Even though the decision to move will likely be profitable for his business, his decision to move still has the effect of uprooting his children's lives. We are thus tasked with protecting the children's best interests in the face of this inevitable move. Contrary to Bryan's view, we believe the school year parenting schedule set by the district court will aid the children's transition to Forest City while also protecting their existing connections to their mother and the Hubbard community. Further modifying the school year parenting schedule would not be in the children's best interests.

Likewise, we believe the record fairly shows the district court did equity in crafting the summer and holiday parenting schedules. *See Salmon*, 519 N.W.2d at 95. Bryan complains that the schedule is "overly complicated and involves a great deal of exchanges." We disagree—the schedule is not complex. Besides biweekly weekend parenting time for Bryan, both parents are allotted two weeks of extended visitation time.

We reiterate that the district court was tasked with crafting a schedule that provides "opportunity for maximum continuous physical and emotional contact" with both parents." Iowa Code § 598.1(1). Because Bryan is the physical care provider, this means that Laura must be provided liberal visitation rights. Here, the district court accomplished that through liberal holiday visitation scheduling for Laura. The district court's chosen holiday schedule allows Laura to have continuous and consistent contact with the children through a majority of the yearly

extended holiday periods. But the schedule alternates every year for major holidays such as Easter, Thanksgiving, and Christmas, as well providing Bryan the children every Father's Day. Bryan fails to make clear why the holiday schedule is not in the children's best interests. He primarily relies on his argument that there are too many exchanges in the schedule, stating the schedule is "unduly disruptive to what the children have experienced the majority of their lives." But Bryan's choice to move 100 miles away is also disruptive to the children's lives, and the move was always going to create a burdensome exchange situation. Laura should not be denied her right to liberal visitation due to Bryan's decision to move.

"Appellate attorney fees are not awarded as a matter of right" and rest in our discretion. *Worth v. Geinitz*, No. 23-1080, 2024 WL 2316657, at *3 (Iowa Ct. App. May 22, 2024). We disagree with Laura that "Bryan's positions on appeal are predicated upon modification principles inapplicable to visitation cases" and decline to award her appellate attorney fees.

Finding the modified parenting schedule is in the best interests of the children, we affirm.

**AFFIRMED.**